*[handwritten annotations:]* Motion and exhibit Accessed in chambers weeks after they were filed with the Court

*[stamp, handwritten:]* Leave to file GRANTED 7/2/2021
DABNEY L. FRIEDRICH   DATE
United States District Judge

*[stamp:]* RECEIVED Mail Room
JUN - 4 2021
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

ASHLEY FURST,

Petitioner

V                                                     CASE NO. CR19-014
                                                      The Hon. Dabney L. Friedrich

UNITED STATES OF AMERICA

Respondent

### MOTION TO WITHDRAW ATTORNEY REPRESENTATION

The petitioner, Ashley Furst, in *pro se*, respectfully submits this request to the court to consider the motion to remove Attorney Bernard L. Grimm as the attorney of record for Ashley Furst and for criminal case CR19-014.

### History

1. On August 28, 2019 Attorney Bernard L. Grimm was retained by Ashley Furst for representation in criminal case 2019-CR-00014.

2. Per retainer agreement *(See* Exhibit A, Retainer Agreement, Conclusion of Representation, page 3*)*, Attorney Bernard L. Grimm's representation of Ashley Furst ended on May 10, 2019, the day of her sentencing. On said day, this Court imposed a sentence of 27 months of imprisonment followed by a three-year term of supervised release.

3. Ms. Furst was ordered to surrender to Alderson Federal Prison Camp on June 25, 2019.

4. On June 4, 2020, Ms. Furst was released from Alderson Federal Prison Camp to Independence House South Federal, located at 2765 S Federal Boulevard, Denver, CO 80236, per the approval of pro se motion filed with this Court. (*See* Exhibits B and C)

5. On July 15, 2020, Ashley Furst filed an ethical complaint with the District of Columbia Bar Association, and a fee arbitration dispute with the District of Columbia Bar Association, on August 7, 2020 against Mr. Grimm (*See* Exhibits D,E, and F).

6. As a result of an investigation into Attorney Bernard Grimm by the District of Columbia Bar, Said Attorney Bernard Grimm has consented to disbarment effective September 1, 2021. (*See* Exhibit G)

7. Ms. Furst received notification from Towson University on May 10, 2021 of two subpoenas that had been issued under the letterhead of criminal case CR19-014. (*See* Exhibits H, I, and J). As stated in the subpoenas, Attorney Bernard Grimm is requesting information about Ashley Furst as "related" to her criminal case, and under the impression that Attorney Bernard Grimm is still representing Ashely Furst. This is not a true statement of fact.

8. Ashley Furst received another notification on May 15, 2021 from Northern Trust (*See* Exhibit K) that a subpoena had been issued by Attorney Bernard Grimm seeking financial information from accounts Ashley Furst had previously held with Northern Trust.

9. On the subpoenas sent to Towson University there are several inconsistencies and misspellings, including the misspelling of Judge Dabney Friedrich's name- spelled "Fiedrich" on the subpoenas.

10. Ashley Furst Alleges that Attorney Bernard Grimm issued these subpoenas under the guise of representing Ashley Furst for information about her for his own defense in the upcoming fee arbitration hearing.

11. It should be noted that Attorney Bernard Grimm has since withdrawn all subpoenas sent out under the guise of seeking information on Ashley Furst's behalf.

12. Ashley Furst would also like to request all fees that will be returned to her at the conclusion of the fee arbitration hearing will be immediately sent to the American Horse Council (AHC) for restitution purposes.

**Withdraw Causes**

13. As previously stated, Attorney Bernard Grimm's representation of Ashely Furst ended on the day of sentencing, May 10, 2019.

14. Attorney Bernard Grimm has repeatedly abused the judicial system and its processes as an attempt to garner information about Ashley Furst through the submission of various subpoenas under the letterhead of the federal court to use for his personal advantage.

**Conclusion**

As set forth in said pro se motion, Ashley Furst moves this court to remove Attorney Bernard L. Grimm as the attorney of record for Ashley Furst on all proceedings including and not limited to criminal case CR19-014.

 **The Law Office of Bernard Grimm**

233 7th Street, N.W. Ste 300
Washington, D.C. 20004
office 202-464-6333
fax 202.747.5633
bgrimm@grimmlawdc.com
www.grimmlawdc.com



Admitted to Practice
District of Columbia
Maryland

Of Counsel
Linda Kenney Baden
New York
New Jersey

Ashley Furst
9802 Venneford Ranch Road,
Highlands Ranch, CO 80126

December 20, 2018

**RE: UNITED STATES v. ASHLEY FURST**

Dear Ashley;

My representation does not include the following; post conviction proceedings, appeal, recovering client's personal property, or forfeiture litigation. Ashley, as you know, I have done a considerable amount of work on the re-payment of the proceeds, up to and including negotiating the forfeiture with the U.S. Attorney in this case, Virginia Cheatman, Consequently, I would have to charge you for my time and my staff's time that was invested in that.

Attached is an updated engagement letter.

Sincerely,

Bernard S. Grimm
The Law Office of Bernard S. Grimm
409 7th Street, N.W., Suite 300
Washington, D.C. 20004
Phone: 202.644.6333
Cellular: 202.438.7303
Fax: 202.747.5633
Email: bgrimm@grimmlawdc.com


RECEIVED
Mail Room
JUN - 4 2021
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia



# The Law Office of Bernard Grimm

409 7th Street, N.W. Ste 300
Washington, D.C. 20004
office 202-464-6333
fax 202.747.5633
bgrimm@grimmlawdc.com
www.grimmlawdc.com

Admitted to Practice
District of Columbia
Maryland

Of Counsel
Linda Kenney Baden
New York
New Jersey

Ashley Furst
9802 Venneford Ranch Road,
Highlands Ranch, CO 80126

December 20, 2018

\$55,000

Dear Ashley,

This letter will set forth and explain the financial terms and conditions of your retainer. In order for my firm to assume the responsibilities involved in this representation and enter my appearance, we will require a flat fee payment of $80,000.00. The initial deposit will be $25,000, which you have already paid. This document sets forth our agreement and shall become a binding agreement between my firm and the signatories to this document.

Expenses that a law firm normally incurs in the general maintenance and administration of a case, such as copying, postage, messenger service, and filing fees are typically billed to the client. As a courtesy, I will absorb these costs. The fee is based on the previous arrangement you had with prior counsel. Normally I would charge a significantly higher flat fee but you were told that the ceiling would be $80,000 so I will abide by that figure. There are expenses that I can't anticipate and roll into the flat fee because I have no way of knowing whether these services or bills are going to be necessary to your case. Specifically, those are investigative costs, transcripts and experts. I doubt you will need an expert in this case but we will need an **investigator**, certainly if the case proceeds to trial, which is billed at $145.00 an hour.  You will also be responsible for transcript fees, if they are necessary.  For example, if we have a hearing and I think that a witness's testimony is necessary you will be responsible for that cost. My estimate is that in a case like this investigation and transcript costs, if you proceed to trial would cost approximately $10,000, probably less. My normal hourly rate is $750.00. I have analyzed this flat rate based on an hourly rate of $500.00 an hour because of the person who referred your case to me.  Again, you're not paying me hourly, I am simply informing you how I arrived at the total figure of $80,000 if the case goes to trial. That fee is earned upon receipt and is non-refundable.

Basis for this Legal Fee

This is the fee based on the facts and circumstances, as I now know them. In addition I have to factor in the number of people in the firm necessary to prepare, litigate but also research the case, the difficulty of the case, the number and nature of the charges, you, the client's objective, ability to follow advice, designated jurisdiction, and the disagreements. In addition, keep in mind that, in order to assume responsibility of this case, I will have to decline other work. The dynamic and facts of any case can change dramatically, requiring much more work, attention, and manpower

that we originally anticipated. To that end, in the event that you are charged with additional counts that neither of us anticipated, there may be an increase in the flat fee, although based on the fact that you have been very candid with me I believe I know everything that might be coming down the pike, so I don't anticipate an increase.

By signing this, you are agreeing to have your file destroyed within one month of the closure of the case or you will be required to pay $55.00 a month for storage. If we do not receive specific notice of your intention within seven (7) business days from the date of dismissal or sentencing we will have your file destroyed. This is for your protection as well. Neither of us want confidential documents floating around. You also have the right to make an appointment with my secretary Kate Ross, at 202-464-6333, to pick up your file.

Your failure to pay the legal fee according to the arrangements set forth above shall be grounds for me to withdraw from your representation. Consequently, by signing this document, you are agreeing to my withdrawal and are consenting to it. You will be responsible for getting a new attorney. However, you should know that I have never withdrawn from a case because of a client's failure to pay a legal fee, within reason. For example, if your legal fee is late by 3 (three) business days, or you are short a small amount of money I will not seek to withdraw from your case. However, if you are not paying your legal fee at all, or if I determine that you misrepresented the facts of the case, that also will be grounds to withdraw, which you are consenting to.

## Privileged the Confidential Communications

Everything that we discuss is covered by the attorney client privilege. That means that I am prohibited from discussing your case with anyone other than my staff and the prosecutor (however she cannot use my statements about the case against you). The privilege does not extend to third parties. As I mentioned, it extends to my staff but I am the only person able to provide you with legal advice. Non-attorneys in my office will not be providing legal advice and you cannot rely on what you perceive to be advice from my staff. The same applies to you. If you have discussions with anyone regarding the facts of the case that could constitute a waiver of the privilege and you would be no longer covered by it if the government finds those people and speaks to them, other than your husbands who is covered by the matrimonial privilege, from the time that you were married.

## Conclusion of Representation

My representation ends when any of the following events occur, a guilty verdict, a mistrial, a plea and sentencing dismissal, diversion, or sentencing after a trial.

## Firm Obligations

My obligation is to meet and speak with you at mutually agreeable times.[1] I will speak with you and explain all court proceedings, provide legal advice, that I request you to follow, investigate the case, interview all witnesses that I determine to be relevant, and prepare the case for trial, if that event occurs.

My additional responsibilities include; legal research, filing all necessary motions with the court, obtaining discovery, reviewing discovery, meetings with the prosecutor and negotiations, preparing for hearings, securing video surveillance, if available, issuing subpoenas, meetings with my investigator and meetings with paralegals and law clerks.

You are entitled to copies of all pleadings, motions, and correspondence related to your case. While I am happy to do that, please understand that the law is extremely complicated and obscure, it is more grey than black and white and with the over saturation of the media covering court proceedings and their resulting misinterpretation of headline litigation, clients frequently get confused about their own case. Again, I am happy to give you copies of everything, but that will affect the legal fees by at least 10-20%. By signing this, you are waiving your right to have all documents sent to you. Again, however you have the right to have everything mailed to you or select documents.

### Internet and Social Media

Internet and social media has been a blessing and a curse. It empowers my investigator to access information about witnesses with the click of a button. On the other hand it has made my job much more difficult when discussing the case with a client. Inevitably clients will say to me " I was on the internet and I saw a case just like mine". That reasoning is flawed and grossly inaccurate. I have been practicing for almost 30 years. No two cases are alike, ever. If you want me to represent you then no Internet use regarding your case. Obviously if you want to educate yourself go ahead. But be certain if you stay on the internet long enough you will get the answer you want.

I have been practicing law for close to 30 years. I have also taught at American University Law School and Georgetown Law. One cannot absorb or understand the law and the nuances surrounding it on the internet. I have practiced in Canada, New York, North Carolina, South Carolina, West Virginia, Maryland and Washington D.C., each with their own different sets of rules and procedure. You cannot learn that by browsing on the Internet.

### Client Obligations

You are to be on time for meetings, telephone conferences, and reply reasonably promptly to emails, texts, and phone calls from my office.

---

[1] Although texts and emails are an efficient way of communicating, I do not regard them as an effective and meaningful means of rendering legal advice. My preference is to meet in person at mutually agreeable times.

You are obligated to be fully candid and forthright about the facts and circumstances of this case. Again, this information is shared with no one, so I expect to be fully informed. I appreciate that the facts may be difficult or even embarrassing to discuss; however, if you keep it from me it can have a devastating effect on your case. You are not permitted to decide what you think I should know or not know. Something you consider small or insignificant could make the difference in a case. Consequently, you need to inform me of every fact, every witness, favorable or unfavorable, their contact information, and anything else you deem important.

*Do not* erase or delete any content on phones, I-pads, laptops, desktops, diaries, dispose of thumb drives, or hard copies of any document possibly relevant to this case. *Do not contact any witnesses,* other than reaching out to them to inform them that I will be calling them. However, you should immediately notify me of any witness, good or bad that you think has any bearing on the case, with their contact information.

My ability to represent you is contingent upon you being forthright about all aspects of this case, including any witnesses or evidence you are aware of. Their contact information needs to be promptly disclosed to me, regardless if they are favorable or unfavorable to the case. This also includes disclosure of any forensic or physical evidence you think may help in your defense. You are required to be in court at least 30 minutes prior to any scheduled time. Unlike in a civil case, your presence at every court date is required.

If the foregoing terms are acceptable to you, please sign where indicated below and return to me. A copy will be provided to you for your records. You can pay with a business check, personal check, credit card, or you can wire funds to my firm escrow account; I have attached wiring instructions. If you decide to wire the legal fees, please contact Kate Ross, my Operations Manager, by email, at kross@grimmlawdc.com with the date and amount of your wire.

If you have any questions, contact Ms. Ross or myself. You can call me or Ms. Ross at our respective cell phone numbers, 202-438-7303 and 703-855-5295, if you need to speak with me.

I look forward to the privilege of representing you and to a favorable resolution of your case.

Sincerely


Bernard S. Grimm



**READ AND APPROVED**

*Ashley Furst* (signature)

Ashley Furst

12/21/18

Date

## WIRING INSTRUCTIONS

| PNC Bank - IOLTA | |
|---|---|
| Account Number: | 5335337628 |
| ABA Routing No.: | 031000053 |
| Bank Name: | PNC Bank |
| Bank Location: | 1050 Connecticut Avenue NW |
| | Washington, DC 20036 |
| Client Name | **ASHLEY FURST** |

mailed
1/24/20

UNITED STATES DISTRICT COURT

Leave to file GRANTED 7/2/2021
DABNEY L. FRIEDRICH   DATE
United States District Judge

Movant,

Case No.

v                                    CR19-014 (DLF)

Respondent.

United States of America

## MOTION FOR RECOMMENDATION REGARDING
## RESIDENTIAL REENTRY CENTER
## AND/OR HOME CONFINEMENT PLACEMENT

NOW COMES Defendant Ashley First, in pro se,
respectfully requests this court to consider a recommendation
to the Bureau of Prisons ("BOP") regarding placement in a
Residential Reentry Center ("RRC") or home confinement
subsequent to Defendant's period of incarceration.

In 2008, Congress passed the Second Chance Act of
2008 in order to help improve the reintegration of offenders
and to reduce recidivism. See also First Step Act of 2018.
In an effort to achieve these goals the BOP utilitzes RRCs,
more commonly known as "halfway houses" in order to provide
transitional services to offenders. 18 U.S.C. §3624(c)
provides:

(c) Prelease Custody

(1) In general - the Director of the Bureau of
Prisons shall, to the extent practicable, ensure
that prisoners serving a term of imprisonment
spends a portion of the final months of that
term (not to exceed 12 months), under conditions



RECEIVED
Mail Room

JUN - 4 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1

that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home Confinement Authority - The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of inprisonment of that prisoner or 6 months whichever is less. 18 U.S.C. §3624(c)(1) & (2).

While ultimately left to the discretion of the BOP RRC placement must be:

(A) Conducted in a manner consistent with §3621(b) of this title;

(B) Determined on an individual basis; and

(C) Of sufficient duration to provide the greatest likelihood of successful reintegration into the community.  18 U.S.C. §3624(b)(C).

Among the relevant 3621(b) factors to be considered by the BOP are:

(4) Any statement by the court that imposed the sentence -

(A) Concerning the purpose for which the sentence for imprisonment was determined to be warranted; or

(B) Recommending a type of penal or correctional

facility as appropriate.

An RRC is a "penal or correctional facility" within the meaning of the statute.

Therefore, a recommendation regarding the length of an RRC placement is appropriate and should be afforded inasmuchas rehabilitation is related to the purpose of the court's sentence.

MS First is currently serving a 27 month sentence imposed by this court. With good time credit, MS First has a release date of May 25, 2021 making it vital for MS First to be recommended for 12 months of [10] halfway house/ [2] home confinement placement.

MS First would generally benefit from this placement to appropriately transition back into society. Since her incarceration, MS First has been preparing for her release but will be faced with several obstacles once she is back in society, more important of which is finding gainful employment. MS First requires the resources of the RRC to assist her in obtaining employment so that she can contribute to her household and support herself.

10 months of halfway house will allow her to find employment which is needed due to the strained financial stability of her household. This placement will also help MS First with the support needed to transition into the remaining 2 months of home confinement (total of 12 months). Together this will provide MS First the plan needed to ensure the greatest likelihood of successful reentry into the community.

During her incarceration, _Ms First_ has been continuously taking classes to better herself and prepare for release (See Exhibit A)  In addition to those classes listed, _Ms First_ has also completed the following programs: Independent Study Program, yoga class teacher

In addition, _Ms First_ has worked in the following departments while incarcerated: Food Service Warehouse This employment opportunity has allowed her to work hard and achieve the following: Forklift License

The most important goals _Ms First_ hopes to accomplish immediately after release is to return back to work to help her family and herself repay her debt to society. She also wants to strengthen her family ties and to bring structure and normalcy back into their lives.

_Ms First_ understands that the ultimate decision regarding RRC and home confinement placement lies within the discretion of the BOP.  Nonetheless, the BOP is required by statute to consider any judicial recommendation regarding the same, and the court is free to make such recommendation at "any time".  United States v Ceballos, 671 F. 3d. 852, 856 (9th Cir 2011); Martin v United States, 2008 WL 4546433 at* 1-2 (W.D. Penn 2008); Locaboni v United States, 251 F. Supp. 2d 1015, 1017 (D. Mass 2003).

The combination of _10_ months RRC placement and _2_ months home confinement would greatly benefit _Ms First_, her family and her community.

4

WHEREFORE, in the interest of promoting her successful reentry into the community, 𝐼𝐼𝐼𝑠 Furst respectfully requests that the court recommend to the BOP that 𝐼𝐼𝑠 Furst receive 12 months of prerelease custody, combining 10 months placement at an RRC and 2 months placement in home confinement.

Respectfully submitted,

Ashley C Furst
_____
[Print name]
Pro Se Litigant
Register Number: 35522-016
Alderson Federal Prison Camp
P. O. Box A
Alderson, WV   24910

DATE: 1/23/2020

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was duly mailed and deposited in the U.S. postal service mail at this facility, and served upon this court this 23 day of January, 2020.

Ashley C Furst
SIGNATURE BEFORE A NOTARY

Subscribed and sworn to before me this 23 day of January, 2020.

NOTARY PUBLIC

STATE OF WEST VIRGINIA
COUNTY OF GREENBRIER
The foregoing instrument was acknowledged before me this 13 day of January, 2020 by B. Cagle
Notary Public's Signature    Notary's Printed Name
My Commission Expiration: July 15, 2024



B CAGLE
Notary Public Official Seal
State of West Virginia
My Comm. Expires Jul 15, 2024
FPC Alderson
PO Box A Alderson WV 24910

5

Leave to file GRANTED

_____ 7/2/202

DABNEY L. FRIEDRICH    DATE
United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
v. ) Case No. 1:19-cr-00014-DLF
)
ASHLEY FURST )

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S PRO SE MOTION FOR RECOMMENDATION REGARDING RESIDENTIAL REENTRY CENTER AND/OR HOME CONFINEMENT

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files its response to the defendant's pro se Motion for Recommendation Regarding Residential Reentry Center and/or Home Confinement.   In her motion, the defendant asks that the Court recommend to the Bureau of Prisons ("BOP") that BOP place her in a Residential Reentry Center ("RRC") for ten months, followed by two months of home confinement, for the final 12 months of her sentence.   For the reasons explained below, based upon the unique circumstances of this case, the government does not oppose a judicial recommendation for the defendant's prelease into an RRC and/or home confinement.

### I.    PROCEDURAL BACKGROUND

On January 29, 2019, the defendant pled guilty, pre-indictment, to one count information charging her with Fraud by Wire, Radio, or Television, in violation of 18 U.S.C. § 1343 [Dkts. 3, 4, 5, 6].   As part of the plea agreement, the defendant agreed the defendant agreed to pay restitution in the amount of $545,594.87 to the victim of the fraud in this case, the non-profit American Horse Council.   Prior to sentencing, the defendant made significant restitution payments, including one payment in the amount of $276,000.   On May 15, 2019, the Court sentenced the defendant to 27 months' incarceration, followed by three years of supervised release



RECEIVED
Mail Room

JUN - 4 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

[Dkts. 20, 21].   The Court also ordered the defendant to pay restitution in the amount of $244,994.87, which took into account payments made by the defendant prior to sentencing.

On February 6, 2020, the defendant filed the instant motion [Dkt. 22].   The Court has ordered the government to respond to the defendant's motion on or before March 12, 2020.

## II.   RESPONSE

The defendant is currently housed at the Federal Prison Camp in Alderson, West Virginia "FPC Alderson").   In her motion, she requests that this Court recommend to BOP that she be released to an RRC for 10 months, followed by two months in home confinement.   The defendant's request for a judicial recommendation for longer RRC placement is premised on her general assertion that a longer RRC placement will facilitate her transition back to society.   The defendant asserts that she will require the resources from the RRC to assist her in obtaining employment so that she can support herself and so that she can contribute more to her restitution obligations in this case.   Def't's Motion, at 3, 9, 12.   The defendant's projected release date from BOP is May 25, 2021, approximately 15 months from now.[1]

Two federal statutes govern BOP's discretion to place inmates in a particular facility for a particular period of time:   18 U.S.C. § 3621(b), entitled "Place of imprisonment," and 18 U.S.C. § 3624(c), entitled "Prerelease custody."   Section 601 of the First Step Act of 2018 recently amended 18 U.S.C. § 3621(b) to encourage the placement of prisoners close to their families, and added the following language: "Notwithstanding any other provision of law, a designation of a

---

[1]      According to the defendant's case manager at FPC Alderson, the defendant has not yet asked BOP to review her case to determine when she is eligible for release into an RRC or home confinement, prior to her release into the community.   Her next scheduled review takes place in June 2020.

place of imprisonment under this subsection is not reviewable by any court." Pub. L. No. 115-391, § 601, 132 Stat. 5194, 5237 (2018).

Pursuant to 18 U.S.C. § 3624(c), the BOP, in its discretion, may "prerelease" inmates to an RRC or home confinement[2] as they approach the end of their sentences. 18 U.S.C. § 3624(c). Section 3624(c)(1) provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).   BOP must ensure that RRC placement is: (i) conducted in a manner consistent with 18 U.S.C. § 3621(b); (ii) determined on an individual basis; and (iii) "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6); see 28 C.F.R. § 570.22.

As for home confinement, 18 U.S.C. § 3624(c)(2) provides that BOP's "authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."   Section 602 of the First Step Act of 2018 recently amended 18 U.S.C. § 3624(c)(2) to include the following language: "The [BOP] shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."   Pub. L. No. 115-

---

[2]   "Community confinement" is defined as residence in, among other things, a halfway house or "other community correctional facility (including residential re-entry centers)."   28 C.F.R. § 570.20(a).   "Home detention" is defined as "a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office or other monitoring authority."   28 C.F.R. § 570.20(b).

391, § 602, 132 Stat. 5194, 5238 (2018); see 28 C.F.R. § 570.21 (describing time frame for home confinement).   See also Bertram v. Streeval, No. 19-5173, 2019 U.S. App. LEXIS 27088, at *3-4 (6th Cir. Sept. 6, 2019) (affirming denial of request for home confinement where the defendant was scheduled to be released to home confinement for maximum period permitted by § 3624(c)(2)).   Accordingly, BOP has discretion to make decisions with respect to the timing and placement of prisoners prior to their release into the community and BOP's decisions are generally not reviewable by a court.

The Court, however, does have authority to "recommend[]" a particular "type of penal or correctional facility," but such a recommendation has "no binding effect on the authority of the Bureau ... to determine or change the place of imprisonment of [any] person." 18 U.S.C. § 3621(b)(5); see United States v. Crawford, 312 F. Supp.3d 31, 35 (D.D.C. 2018); United States v. Jackson, No. 16-CR-05- 05 (JDB), 2017 U.S. Dist. LEXIS 201726, at *3–4 (D.D.C. Dec. 7, 2017). The defendant acknowledges that any recommendation by the Court to the BOP would be purely advisory because the ultimate decision is within the discretion of BOP.   Def't's Motion, at 2, 9.

Based upon the unique circumstances in this case, the government does not oppose a judicial recommendation for early release into an RRC/home confinement in this matter.   Here, the defendant's crime, although serious, was non-violent.   She also admitted guilty early and, at sentencing, the government suggested that a sentence at the bottom of the guidelines range was appropriate.   We also note that the defendant has paid more than 50% of her restitution obligation, which is the rare case vis-à-vis other white collar defendants.[1]   Further, during her incarceration,

---

[1]   According to BOP, the defendant currently makes quarterly payments of $25 towards restitution from her prison pay.

she has participated in a number of BOP educational and work programs to prepare her for release into the community and to aid in her rehabilitation; she also has not incurred any disciplinary infractions.  Finally, the defendant continues to express her remorse for her crime and, if granted prelease by BOP, she intends to seek gainful employment so that she can support herself and continue to fulfill her restitution obligations in this case.

WHEREFORE, the government respectfully submits this response to the defendant's pro se Motion for Recommendation Regarding Residential Reentry Center and/or Home Confinement.

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney
D.C. Bar Number 437-437

MARGARET J. CHRISS
Chief, Special Proceedings Division
D.C. Bar Number 452-403

/s/
PAMELA S. SATTERFIELD
Assistant United States Attorney
Special Proceedings Division
555 4th Street, N.W.
Washington, D.C. 20530
D.C. Bar No. 421-247
Pamela.satterfield@usdoj.gov
202-252-7578

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, this 5th day of March, 2020, I caused a copy of the foregoing government's Response to defendant's pro se Motion for Recommendation Regarding Residential Reentry Center and/or Home Confinement, to be served via U.S. Mail on the defendant, Ashley Furst, Fed. Reg. No. 35522-016, Alderson Federal Prison Camp, P.O. Box A, Alderson, WV 24910.

/s/
Pamela S. Satterfield
Assistant United States Attorney

Leave to file GRANTED

DABNEY L. FRIEDRICH   DATE
United States District Judge

7/2/2021

I retained Mr. Grimm in 2018 as my representation for my criminal case (United States vs Ashley Furst)  when it was determined that I was going to be charged with one count of wire fraud.

Throughout my experience, Mr. Grimm was rude and unprofessional. He routinely talked down to me and made me feel worthless.

Most importantly, Mr. Grimm owes me or my victim funds that he has been holding in trust- he claims that all of the funds were used up on work he did after my case was sentenced- although by this time my retainer agreement had expired. I paid Mr. Grimm a flat retainer fee (which I have now come to realize was grossly inflated), and despite my repeated requests for an accounting on how exactly these funds were being spent, I never received any detailed records. Mr. Grimm also claims that his retainer fee was "non-refundable" which is grossly incorrect.

I initially wired Mr. Grimm $350,000 in order to begin to pay back funds I embezzled. Mr. Grimm stressed the importance of this in order to "prevent the government from illegally seizing monies." As you can see in the attached screenshots, he stated he would hold these funds in his trust account and return them to me at any time I requested.

It was determined that I embezzled approximately $545,594, and Mr. Grimm made a first payment directly to

my victims of $276,000 in January 2019. This left a "balance due" of $244, 994.87. Prior to my May 10, 2019 sentencing, Mr. Grimm made two additional payments to my victims through the court: one for $2,600 on 5/2/19, and a second of $22,000 on 5/7/19. After my sentencing he made one last large payment of $24,600 on 7/16/19. This is a total of $325,200 being paid out of the $350,000 I originally sent him- leaving a balance of $24,800 in trust. I've attached a recent receipt from the court to verify this as well.

Prior to, and after, my self-surrender to prison, I repeatedly asked Mr. Grimm for accounting on the funds I had left. He never responded to my requests to I basically "gave up" until I was released. Upon my release on June 4, 2020, I contacted Mr. Grimm again asking for an update in the amount left- as you can see in the text screenshots, he was rude and dismissive, and claims that all of the funds had been "used up." As of today, 7/15/20, the $24,800 left in trust still remains unaccounted for. My conclusion is that Mr. Grimm has simply kept that money for himself, citing that he did work in my behalf, which is untrue.  His representation of me ended at my sentencing, but he still kept those funds- they should have been either returned to me like he stated he would do, or sent to my victim for restitution payment as originally intended.

As I previously mentioned, Mr. Grimm was disrespectful and at times rude and threatening. He berated me and made me feel worthless. I've attached some screenshots of conversations and emails- most notable is an email

where he asks "what the hell does she want" when he was informed that I left a message for him.

To end, Mr. Grimm claims that he used the $24,800 left over on work he did for me after I was sentenced and my retained agreement expired. Yet to this day I have never seen an invoice as to how the exorbitant amount of retainer fees I paid were used. The amount I invested in Mr. Grimm was more money than was deserved.

Leave to file GRANTED

DABNEY L. FRIEDRICH
United States District Judge

_____ 7/2/2021
DATE



# OFFICE OF DISCIPLINARY COUNSEL
## THE BOARD ON PROFESSIONAL RESPONSIBILITY
### DISTRICT OF COLUMBIA COURT OF APPEALS

515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501   Fax (202) 638-0862
www.dcattorneydiscipline.org



RECEIVED
Mail Room

JUN - 4 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

*(Please print or type)*

Date: 7/15/2020

A.  Your Name: (Dr.)
(Mr.)
(Ms.)
(Mrs.) Ashley _____ C. _____ Furst _____
         (First)                    (Initial)              (Last)
Address: 2765 South Federal Blvd _____
             (Street)                               (Apt. #)
Denver _____ CO _____ 80236 _____
     (City)                     (State)                (Zip)

Business Phone: _____ Home Phone: _____ Cell Phone: 410-963-8988 _____

Email Address: Ashleycole23@yahoo.com _____
(NOTE: It is very important that we have your telephone number(s) and that you inform our office if you have a change of address.)

B.  Attorney Complained Of:

Name: Bernard _____ _____ Grimm _____
          (First)                     (Initial)              (Last)
Address: 409 7th Street NW, Suite 300 _____
             (Street)                               (Apt. #)
Washington. _____ DC. _____ 20004 _____
        (City)                     (State)                (Zip)
Telephone No.: 202-464-6333 _____ Attorney's Bar No., if known: 378171 _____

C.  Have you filed a complaint about this matter anywhere else? ☐ Yes ☒ No // If yes, please give details.
_____
_____

D.  Do you have a written retainer agreement with the attorney? ☒ Yes ☐ No // If yes, please attach a copy.
_____

E.  Where applicable, state the name of the court where the underlying case was filed, and the case name and number.
Case Number DDCX119CR000014
_____
United States vs Ashley Furst
_____

F.  Do you have other documents that are relevant? ☒ Yes ☐ No // If yes, please give details and provide copies.
Screenshots of emails and text messages; Receipt from Clerk of Court
_____
_____

**SEE REVERSE SIDE FOR REQUIRED DETAILS & SIGNATURE**

G.  DETAILS OF COMPLAINT: See attached Word Document
_____

**The Undersigned hereby certifies to the Office of Disciplinary Counsel that the statements in the foregoing Complaint are true and correct to the best of my knowledge.**

SIGNATURE



**FEE ARBITRATION SERVICE**



Leave to file GRANTED

DABNEY L. FRIEDRICH        DATE
United States District Judge

Request for Arbitration

Petitioner's Name(s): **Ashley Furst**

Address: **2765 S Federal Blvd**

City, State, Zip Code: **Denver, CO 80236**

Home Phone: **410-963-8988**          Business Phone: _____

FAX (if available): _____   E-Mail Address: ashleycole23@yahoo.com

(I/We prefer to be contacted at the Home ☐ / Business ☐ Phone)

Respondent's Name(s): **Bernard Grimm**

Address: **409 7th St NW, Suite 300**

City, State, Zip Code: **Washington, DC 20004**

Home Phone: **202-438-7303**          Business Phone: **202-464-6333**

FAX (if available): _____   E-Mail Address: bgrimm@grimmlawdc.com

   **I seek relief in the amount of $ 55,000.00 . I have attached a statement explaining the basis of my claim.**

   **I have enclosed my nonrefundable filing fee in the amount of $_____.
(Please see attached filing fee schedule.  Make check or money order payable to the D.C. Bar.  Do not send cash.)  To request a waiver of the filing fee based upon indigency please contact the ACAB for a Confidential Financial Statement.**

   **☐Check here if you request an accommodation for a disability.  Those who request an accommodation will be contacted by Attorney/Client Arbitration Board staff concerning the request.  (See item #10 on the Agreement to Arbitrate form for the D.C. Bar Accessibility and Disability policy).**

_____          8/7/2020
              Signature                                    Date

**District of Columbia Bar**
901 4th Street NW
Washington, DC 20001
202-737-4700
www.dcbar.org

Rev. (2/2018)



# AGREEMENT TO ARBITRATE

1. I hereby agree to arbitrate, under the rules of the Attorney/Client Arbitration Board of the District of Columbia Bar and applicable District of Columbia law, the following:
<u>A fee dispute between:</u>

| | |
|---|---|
| Petitioner(s) | Ashley Furst |
| | and |
| Respondent(s) | Bernard Grimm |

2.   I agree that the arbitrators will be selected according to Attorney/Client Arbitration Board Fee Arbitration Service Rules of Procedure.

   If the monetary amount at issue is $10,000 or less, a single arbitrator will be assigned to the dispute.  If a dispute is $10,001 or more, a panel of three arbitrators will be assigned to the dispute unless both parties agree to a single arbitrator.
   ☐ Check here if you agree to have your case heard by a single arbitrator.

3.  I will comply with this agreement and the rules of procedure.

4.  I have considered carefully the other options I may have to resolve this dispute before signing this agreement to arbitrate.

5.   The respondent has the right to claim that the petitioner owes the respondent money relating to this dispute.  The arbitrator(s) will consider evidence presented that concerns the respondent's claim and decide this issue when deciding the petitioner's claim against the respondent.

6.  I have read the Important Notice printed on the reverse side of this agreement and I understand that this agreement limits the parties to arbitration before the ACAB as the forum to resolve this dispute.

7.  I understand that an award of the arbitration panel is binding on both parties.

8.  I understand that there is no appeal of the award before the ACAB and that there is only a limited right of appeal in the District of Columbia Superior Court.

9.  I understand that a judgment of a court that has jurisdiction over the parties may be entered for enforcement of the award.

10. It is the intent of the D.C. Bar to provide accessibility to services, programs and activities offered by the D.C. Bar to any qualified applicant, member, or participant with a disability, upon reasonable notice and without requiring action which would result in a fundamental alteration in the nature of the service, program or activity or in undue financial or administrative burden.  I understand that I may contact the ACAB at (202) 780-2772, to request an accommodation for a disability and that if I request an accommodation on the "Request to Arbitrate" form, I will be contacted by ACAB staff.

|  | 8/7/2020 |
|---|---|
| Signature | Date |

**District of Columbia Bar**
901 4th Street NW
Washington, DC 20001
202-737-4700
www.dcbar.org

Leave to file GRANTED

DABNEY L. FRIEDRICH   DATE
United States District Judge

Northern Trust Securities, Inc.


NORTHERN
TRUST

May 7, 2021

SENT VIA U.S. MAIL

Ashley C. Furst IRA
9802 Venneford Ranch Road
Highland Ranch, CO  80126

Re:   *United States of America v. Ashley Furst, Case No. 1:19-cr-00014-DLF*

Dear Ms. Furst:

Please be advised that Northern Trust Securities, Inc. ("NTSI") has been served with a Subpoena to Testify at a Hearing or Trial in a Criminal Case (the "Subpoena") issued out the United States District Court for the District of Columbia.  A copy of the document is enclosed for your records.

This is to inform you that the Subpoena requires NTSI to disclose the requested information regarding your accounts with us.  We are informing you of this Subpoena in accordance with 205 Illinois Compiled Statutes 5/48.1.

Please be advised that NTSI will respond to the Subpoena on May 17, 2021, unless we have been notified that a motion to quash has been filed or other appropriate legal objection is made, or that the matter otherwise has been resolved.  You may wish to consult an attorney to advise you about the foregoing.

If you have any questions related to the Subpoena, please contact me at (312) 630-1828.  Thank you.

Sincerely,

Mary C. Donahue, Senior Paralegal Officer

Enclosure

NTAC:3NS-20

AO 89  (Rev. 08/09; DC 4/10) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT
### for the

District of Columbia   ▾

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ASHLEY FURST | ) |
| | ) Case No. 1:19-CR-00014-DLF |
| Defendant | ) |
| | ) |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:  NORTHERN TRUST SECURITIES, INC.
50 SOUTH LASALLE STREET M-9
CHICAGO, IL 60603

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: 333 CONSTITUTION AVENUE NW, WASHINGTON, DC  20001 | Courtroom No.: JUDGE DABNEY L. FIEDRICH |
|---|---|
| | Date and Time: 6/09/2021   9 AM |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

Please provide any/all accounts/documents which Ashley Furst DOB 1-29-84 SSN# 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 had any signing authority. Please include all signature codes, account applications, monthly statements, checks, deposits, wires, and withdrawals. Include all years from 2012-2019. In addition, please include any/all accounts held in the name of American Horse Council.

Date:   5/04/2021

ANGELA D. CAESAR. CLERK OF COURT

*Evette Saunders*
Signature of Clerk or Deputy Clerk

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   **Ashley Furst**
, who requests this subpoena, are:

ATTORNEY BERNARD GRIMM
409 7TH STREET NW # 300
WASHINGTON,DC 20004
202/464-6333
bgrimm@grimmlawdc.com

Leave to file GRANTED

*[signature]* 7/2/2021 TOWSON.EDU

DABNEY L. FRIEDRICH   DATE
United States District Judge



**TOWSON UNIVERSITY**

May 10, 2021

**Office of the
General Counsel**

8000 York Road
Towson, MD 21252

Ashley Furst
2765 S Federal Blvd.
Denver, CO 80236
Via: Email: Ashleycole23@yahoo.com
and Regular Mail

Re: United. States of America v. Ashley Furst
Case No: 2019-cr-00014-DLF

Dear Ms. Furst:

On or about April 27, 2021 and May 10, 2021, Towson University received two separate subpoenas from the United States District Court for the District of Columbia directing the University to provide a copy of certain student records concerning you. A copy of the subpoenas are attached.

In accordance with the Family Education and Privacy Rights Act of 1974 (20 U.S.C. §1232g(b)(2)(B)), the University is required to notify the student in advance of the University's intent to comply with a subpoena. Therefore, pursuant 20 U.S.C. §1232g, the University is giving you notice of the subpoenas so that you may seek protective action, if you so choose.

If you intend to take protective action from the subpoenas, please notify our office in writing via email or letter to the address above by May 24, 2021. If the University does not hear from you, the University plans to release the subpoenaed records after this date.

Please promptly call if you have any questions.

Sincerely,

*[signature]*

Eduardo Duenas
Paralegal

Enclosures



RECEIVED
Mail Room

JUN - 4 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

410.704.4003   410.704.3205
generalcounsel@towson.edu
www.towson.edu/counsel/

Leave to file GRANTED

DABNEY L. FRIEDRICH   DATE
United States District Judge

AO 89  (Rev. 08/09; DC 4/10) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

District of Columbia  ▾

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ASHLEY FURST | )   Case No.  2019-cr-00014-DLF |
| | ) |
| Defendant | ) |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:  TOWSON UNIVERSITY   (410) 704-2701
800 YORK ROAD
TOWSON, MD 21252

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | 333 CONSTITUTION AVENUE NW, WASHINGTON, DC 20001 | Courtroom No.: | JUDGE DABNEY L. FIEDRICH |
|---|---|---|---|
| | | Date and Time: | 6/09/2021   9 AM |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

ANY/ALL COLLEGE TRANSCRIPTS, DISCIPLINARY ACTIONS, EXPULSIONS, SUSPENSIONS, FINANCIAL LOAN RECORDS AND COMPLETE COLLEGE RECORDS FOR:

ASHLEY COLE FURST  AKA ASHLEY M. COLE   SSN# ▮▮▮▮   DOB ▮▮▮▮

ATTENDANCE DATES: 9/04/02 - 5/19/04  2006 - 2009

Date:   04/26/21

ANGELA D. CAESAR. CLERK OF COURT

*Evette Saunders*

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
ASHLEY FURST _____ , who requests this subpoena, are:
ATTORNEY BERNARD GRIMM
409 7TH STREET NW
WASHINGTON,DC 20004
202/464-6333
bgrimm@grimmlawdc.com

AO 89  (Rev. 08/09; DC 4/10) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT
## for the
### District of Columbia of _____

Leave to file GRANTED

DABNEY L. FRIEDRICH      DATE
United States District Judge

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ASHLEY FURST | ) Case No. 1:19 cr 00014-DLF |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To: TOWSON UNIVERSITY  (410) 704-2701
800 YORK ROAD
TOWSON, MD 21252

   **YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

Place of Appearance: 333 CONSTITUTION AVENUE NW, WASHINGTON, DC 20001

Courtroom No.:

Date and Time: JUDGE DABNEY L. FIEDRICH
6/09/2021   9 AM

   You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable):*

ANY/ALL APPLICATIONS TO TOWSON UNIVERSITY CONCERNING ASHLEY FURST AKA ASHLEY MARIE COLE DOB [ ] SSN# [ ] AROUND YEAR 2006. PLEASE INCLUDE ANY/ALL LETTERS CONCERNING HER PLAGIARISM CHARGES/DISPOSTION FROM UNIVERSITY OF DELAWARE. PLEASE STATE REASON FOR HER ACCEPTANCE AT TOWSON UNIVERSITY IF HAVING KNOWLEDGE OF THIS INFORMATION FROM UNIVERSITY OF DELAWARE OR A LETTER IF YOU HAD NO KNOWLEDGE OF THESE CHARGES  AND IF SHE WOULD HAVE BEEN ACCEPTED WITH THIS KNOWLEDGE

Date: 5/7/21

*ANGELA D. CAESAR, CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

   The name, address, e-mail, and telephone number of the attorney representing *(name of party)* ASHLEY FURST , who requests this subpoena, are:

ATTORNEY BERNARD GRIMM
409 7TH STREET NW #300
WASHINGTON, DC 20001
202/464-6333
bgrimm@grimmlawdc.com

THIS REPORT IS NOT A FINAL ORDER OF DISCIPLINE*



RECEIVED
Mail Room

JUN - 4 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY

Issued
May 11, 2021

Leave to file GRANTED

DABNEY L. FRIEDRICH   DATE
United States District Judge

| | |
|---|---|
| In the Matter of: | : |
| | : |
| BERNARD GRIMM, | : |
| | : Board Docket No. 21-BD-023 |
| Respondent. | : Disciplinary Docket Nos. 2020-D091, |
| | : 2020-D092 & 2020-D149 |
| A Member of the Bar of the | : |
| District of Columbia Court of Appeals | : |
| (Bar Registration No. 378171) | : |

REPORT AND RECOMMENDATION OF THE
BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on Professional Responsibility ("Board") on

Disciplinary Counsel's Motion to Accept Respondent's Consent to Disbarment filed

pursuant to D.C. Bar R. XI, § 12(a) and Board Rule 16.1. Respondent's affidavit of

consent to disbarment, executed on May 7, 2021, is attached to Disciplinary

Counsel's motion. Disciplinary Counsel's motion consents to Respondent's request

that his disbarment be effective on September 1, 2021, to permit him to wind down

his practice.

The Board, acting through its Chair, and pursuant to D.C. Bar R. XI, § 12(b)

and Board Rule 16.2, has reviewed Respondent's affidavit of consent to disbarment

and finds that it conforms to the requirements of D.C. Bar R. XI, § 12(a).

Accordingly, the Board recommends that the Court enter an order disbarring

* Consult the 'Disciplinary Decisions' tab on the Board on Professional Responsibility's website
(www.dcattorneydiscipline.org) to view any prior or subsequent decisions in this case.

Respondent on consent pursuant to D.C. Bar R. XI, § 12(b), effective September 1, 2021.  *See, e.g., In re Allen,* 50 A.3d 508 (D.C. 2012) (accepting consent to disbarment effective several months after Disciplinary Counsel's motion).

The Board further recommends that in the Court's order of disbarment, Respondent be reminded of the provisions of D.C. Bar R. XI, §§ 14 and 16, including the requirement to file the affidavit under D.C. Bar R. XI, § 14(g), and that the period of disbarment will not be deemed to run for purposes of reinstatement until a compliant affidavit is filed.  *See* D.C. Bar R. XI, § 16(a); *In re Slosberg*, 650 A.2d 1329, 1331-33 (D.C. 1994).

BOARD ON PROFESSIONAL RESPONSIBILITY

By: _____
Matthew G. Kaiser
Chair